## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
## Chief Judge Marcia S. Krieger

Civil Action No. 15-cv-00066-MSK

GALEN L. AMERSON, and
JOYCE E. AMERSON,

    Plaintiffs,

v.

TOM SIMMONS,
ANDREW KNUTSON,
ROBERT SCOTT,
KIRSTEN TAGGART,
ROBERT NICHOLSON,
MCLEAN THOMPSON KERVER,
ROGER PEACOCK,
THE HON. JEFF DAVIS,
BRIDGETTE BANKS,
ROBERT SACK,
JERAMIE J. AMERSON,
MARY SATEREN,
BRIAN HAGG,
RANAE TRUMAN,
CAPTAIN JAMES JOHNS,
MARK VARGO, and
BRUCE NEARHOOD,

    Defendants.

_____

## OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND *SUA SPONTE* DISMISSING ACTION
_____

    **THIS MATTER** comes before the Court pursuant to the Plaintiffs' Motion for *Ex Parte* Emergency Temporary Restraining Order and For Preliminary Injunctive Relief (**# 3**).

    The Plaintiffs' *pro se* Complaint (**# 1**) is a lengthy (134 pages), meandering and repetitive document that recites, in extensive detail, the story of a family dispute. In or about 2011, the

elderly Ms. Amerson signed a Power of Attorney, giving her son, Plaintiff Galen Amerson,[1] the power to exercise control over her property and affairs. In February 12, 2012, Steven Amerson, also Ms. Amerson's son and Galen's brother, challenged Galen's designation. Shortly thereafter, Ms. Amerson suffered a health reversal that left her mentally and physically incapable of caring for herself. Consistent with his authority, Galen arranged to have her placed in an assisted living facility. Steven and his girlfriend, Defendant Rita Breese, opposed this placement and removed Ms. Amerson from the assisted living facility. Thereafter, the brothers began a lengthy, multifaceted dispute over who was entitled to control Ms. Amerson's person and property, including allegations by Galen that Steven and Ms. Breese forged documents and otherwise misrepresented their status in order to take possession of Ms. Amerson's bank accounts and other property.

In October 2102, Galen commenced suit in the state court in South Dakota (where, it should be observed, Ms. Amerson and all of the Defendants resided) seeking to confirm his appointment as Ms. Amerson's guardian and attorney-in-fact. Although Galen alleges that all sorts of procedural irregularities accompanied the state court's hearing of the suit, it appears to be undisputed that Steven challenged Galen's request. Eventually, the state court appointed Defendant Kirsten Taggart to be a co-Conservator to serve with Galen.[2] Galen alleges that Ms. Taggart conspired with Steven and others to improperly transfer much of Ms. Amerson's property to Steven.

---

[1] Because the Court's custom of referring to parties by their surnames would introduce undue confusion in this matter, the Court will refer to the Amerson brothers by their given names in this Order.

[2] As revealed in exhibits attached to Galen's motion for preliminary injunction, on March 22, 2013, the South Dakota court entered an order giving Ms. Taggart's employer, First Interstate Bank, conservatorship over Ms. Amerson's property and granting Galen guardianship over Ms. Amerson's person.

In August 2013, Steven Amerson passed away. Galen requested permission from the South Dakota state court to transfer Ms. Amerson to an assisted living facility in Colorado (where Galen, now Ms. Amerson's sole surviving child, resided). Ms. Breese and Ms. Taggart, among other Defendants, apparently opposed this request. Much of the remainder of the Complaint discusses Galen's objections to various (allegedly false) assertions made in that suit by various Defendants, procedural irregularities committed by Defendant Jeff Davis, the judge presiding over the suit, and actions by Ms. Taggart and others relating to Ms. Amerson's property. In or about May 2014, Judge Davis apparently ordered that Galen be removed as Conservator and attorney-in-fact for Ms. Amerson, but leaving Ms. Taggart to function in those roles.

At some point in June 2014, believing that he was entitled to do so, Galen arranged to have Ms. Amerson transferred to an assisted living facility in Evergreen, CO. Ms. Taggart, believing that such transfer was not authorized, sought a contempt citation against Galen from Judge Davis. In August 2014, Judge Davis held Galen in contempt. Ms. Taggart (and/or others, as the Complaint is somewhat unclear) then sought authorization (from courts in either South Dakota or Colorado) to act as Ms. Amerson's guardian in Colorado. By December 2014, it appears that Ms. Taggart's petition was successful, as Galen contends that he has been instructed by the facility in Evergreen that he may not review Ms. Amerson's medical records or communicate with facility staff about her care or status.

Galen's Complaint[3] asserts numerous causes of action: (i) "lack of agency" against Defendants Simmons and Knutson, in that they purported to act as Ms. Amerson's attorneys

---

[3] Although Ms. Amerson is named as a co-Plaintiff in the caption, the Court understands that she appears only in a nominal capacity, as the Complaint makes clear that she no longer has legal competence. Thus, the Court understands that the "claims" by Ms. Amerson are asserted

3

during the South Dakota proceedings despite not having been properly retained by her; (ii) "lack of standing" against Defendants Scott, Taggart, and Nicholson (perhaps among others), in that their alleged appointment of conservators of Ms. Amerson's property was improper or unlawful, and thus, that their past and present actions on Ms. Amerson's behalf are void; (iii) "violation of due process," in that Defendants Scott, Taggart, Nicholson, and Kerver (perhaps among others), improperly moved the South Dakota court to grant judgment in favor of Ms. Amerson against Galen regarding the proceeds of the sale of Ms. Amerson's trailer (among other items of property), and that the state court conspired to conceal records from the proceeding to prevent Galen from filing an appeal; (iv) "[Fourteenth] Amended rights to protection under the law," apparently against Judge Davis, in that the judge violated various South Dakota statutes in his rulings and obstructed Galen's efforts to appeal; (v) "violation of access to the court for redress of grievances," against defendants Taggart, Thompson, Knutson, Scott, Nicholson, Judge Davis, and perhaps others, in that the "use and continue to use Motions for Ex Parte Hearings to block [Galen's] ability to respond to the court" and impeded his ability to appeal Judge Davis' rulings; (vi) "violation of personal, family & civil rights, 42 U.S.C. § 1983," in that the Plaintiffs have "been systematically subjected to officers of the court acting under color of law, while at the same time acting outside the scope of the authority granted to them by state law, and thereby been terrorized, slandered and libeled by officers of the court, who perjured themselves on the court records; (vii) "elder abuse, financial exploitation, neglect and endangerment," against Mr. Peacock, an official with Black Hills Federal Credit Union, for failing to honor Galen's October 2012 request (as Ms. Amerson's attorney-in-fact) that the bank freeze Ms. Amerson's accounts, thus allowing Ms. Breese to liquidate those funds; that representatives of First Interstate Bank

---

on her behalf by Galen, pursuant to his contention that he remains her legal guardian and attorney-in-fact.

4

(such as Ms. Taggart) conspired to "upset, threaten, oppress and intimidate [Ms. Amerson] out of exercising her right to move" to Colorado; and that the staff of the assisted living facility in South Dakota "joined in with the ongoing mental and emotional abuse by attempting to prevent Ms. Amerson from moving; (viii) "theft of [Ms. Amerson's] estate by change of last will and testament," in that Defendants Taggart and Kerver made changes to Ms. Amerson's will to grant additional bequests to Ms. Amerson's grandchildren in order to induce them to take positions adverse to Galen; and (ix) "racketeering," in that Defendants Simmons, Taggart, and others conspired to interfere with Galen's rights as guardian and attorney-in-fact for Ms. Amerson and resorted to the courts for permission to undertake "a form of legalized kidnapping, and to terrify, intimidate, harass, oppress and threaten Galen . . . from performing his duties as guardian," and by various other police and court officials in South Dakota failing to take action on Galen's complaints.

In addition to the Complaint, Galen has filed the instant motion for a temporary restraining order and preliminary injunction **(# 4)**. He requests that this Court "restrain Defendants from any further enforcement of any and all Orders issued from the Pennington County South Dakota court, since October 12, 2012." He also request that "this Court . . . assume control over the state court dockets and the direct administration of this case, and, specifically to address the unlawful depletion of [Ms. Amerson's] estate."

## ANALYSIS

In considering the Plaintiffs' filings, the Court is mindful of Galen's[4] *pro se* status, and accordingly, reads his pleadings liberally. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972).

---

[4] The Court has some doubt that Galen can both appear in a representative capacity as Ms. Amerson's attorney-in-fact and yet do so *pro se*. *See Mann v. Boatright*, 477 F.3d 1140, 1150-51 (10th Cir. 2007) ("even if Beverly were Joseph's legal guardian, she would not be able to bring

However, such liberal construction is intended merely to overlook technical formatting errors and other defects in the Plaintiff's use of legal terminology and proper English. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). *Pro se* status does not relieve the Plaintiff of the duty to comply with the various rules and procedures governing litigants and counsel or the requirements of the substantive law, and in these regards, the Court will treat the Plaintiff according to the same standard as counsel licensed to practice law before the bar of this Court. *See McNeil v. U.S.*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

The Court need not address the particular requirements for granting provision injunctive relief under Fed. R. Civ. P. 65(a) or (b), because the Court finds that the Complaint must be dismissed in any event. For all intents and purposes, the facts of this case are identical to those of *Mann v. Boatright*, 477 F.3d 1140, 1150-51 (10th Cir. 2007). For the reasons explained in *Mann,* this case must also be dismissed.

In *Mann,* the plaintiff (a resident of Illinois) claimed to hold a power of attorney to act as guardian and conservator of her elderly father. When visiting a grandchild in Colorado, the father suffered a sudden reversal of health and the grandchild retained an attorney who secured a new power of attorney designating the grandchild as the father's conservator and guardian. *Id.* at 1144. Friction arose between the daughter and grandchild over care of the father; the grandchild petitioned the Colorado probate court to affirm the grandchild's guardianship. *Id.* The daughter intervened, claiming that the second power of attorney document was unlawfully induced by the grandchild at a time when the father lacked the mental capacity to give it, but the probate court

---

suit on his behalf without the assistance of counsel"). Should Galen fail to promptly retain a licensed attorney to represent Ms. Amerson's interests, the Court intends to dismiss any claims asserted by him *pro se* on her behalf.

decided in favor of the grandchild. *Id.* The daughter then commenced a federal suit against the grandchild, the grandchild's counsel, the probate judges involved in the guardianship proceeding, various individuals who carried out the probate court's orders, and an array of police officers and others who failed to act on the daughter's collateral complaints. The "thrust" of the lawsuit was "to enjoin various orders issued by the probate court, most importantly those appointing [the grandchild] as daughter and conservator." *Id.* at 1145.

The trial court dismissed the complaint *sua sponte* on *Rooker-Feldman* grounds, and on appeal, the 10th Circuit affirmed. *Id.* As the 10th Circuit explained, the *Rooker-Feldman* doctrine "prevents the lower federal courts from exercising jurisdiction over cases" in which a litigant who has lost in a state court proceeding attempts, in federal court, to challenge the state court's determination. *Id.* at 1146. The application of the doctrine does not turn on the belief by the federal court as to whether the state court ruling is correct or not; even if the federal court is convinced that the state court decided the case incorrectly, the litigant's remedy is to seek "reversal or modification in an appropriate and timely appellate proceeding" in the state court, not to ask the federal court to undo the matter. *Id.*

For the *Rooker-Feldman* doctrine to apply, two elements must be present: (i) the state court proceedings have ended or, at least, the rights of the parties to the proceeding have been definitively decided by the state court; and (ii) the relief requested by the party in federal court would require the federal court to set aside the state court's ruling. *Id.* at 1146-74.

Here, although Galen's Complaint is somewhat ambiguous, it appears that a final determination as to the guardianship and conservatorship of Ms. Amerson was made by the South Dakota court on May 27, 2014. As Galen states in the Complaint, on that date "Orders are issued" and "Galen Amerson . . . has been illegitimately stripped of [power-of-attorney] and

7

court appointment as guardian." *Docket # 1, ¶ 152*. Although there were subsequent proceedings, it appears that Galen understood the May 27, 2014 determination to be final, as he alleges that he attempted to file a Notice of Appeal from it on June 5, 2014. *Docket # 1, ¶ 155*. Although the record does not appear to contain a copy of the May 27, 2014 Order, Galen has attached, among other exhibits, a letter written to him from Judge Davis dated July 18, 2014. In that letter, the judge writes that "I have made my decision in your case and the time to appeal has expired. Furthermore, you were removed as the Power of Attorney in this case. I am attaching a copy of the Order removing you. I don't know how to make this any clearer to you." *Docket # 3-2, p. 92, Ex. FF*. Thus, there can be little dispute that the proceedings in South Dakota reached a point of finality before this action was commenced, satisfying the first element of the *Rooker-Feldman* test.[5]

As to the second element, it is clear that the relief Galen seeks in this action is to undo the rulings of the South Dakota court, directly and indirectly. The Prayer for Relief in his Complaint expressly requests "the voiding of all illegal judgments by the defendants and the South Dakota court." His motion for provision relief makes clear that he seeks to "restrain Defendants from any further enforcement of any and all Orders issued from the Pennington County South Dakota

---

[5]   If, on the other hand, the proceedings in South Dakota had not reached a point of sufficient finality, this Court would nevertheless be inclined to abstain from hearing Galen's claims under *Colorado River* abstention. *Colorado River* abstention may be appropriate where the federal lawsuit duplicates a pending state court proceeding and the federal court finds that certain factors render deference to the state court proceedings appropriate. *See generally D.A. Osguthorpe Family Partnership v. ASC Utah, Inc.*, 705 F.3d 1223, 1233-34 (10th Cir. 2013).
   Here, the extensive state proceedings in South Dakota long precede this Court's involvement in the dispute, litigation of the matter in Colorado is inconvenient given that the relevant witnesses and evidence are likely all located in South Dakota, piecemeal adjudication of the parties' rights and obligations would result from simultaneous proceedings in both fora, South Dakota substantive law will ultimately control the inquiry into who is authorized to act for Ms. Amerson, and notwithstanding Galen's assertions of a conspiracy among judges and court staff in South Dakota, this Court is confident that the rules of procedure and the presence of appellate courts in South Dakota provide assurance that Galen's rights are sufficiently protected.

court, since October 12, 2012" He also request that "this Court . . . assume control over the state court dockets and the direct administration of this case." Moreover, the effect of the other items of relief he requests – reinstatement of him as guardian and conservator of Ms. Amerson, reimbursement of funds dispersed out of Ms. Amerson's accounts – would require this Court to indirectly set aside the rulings of the South Dakota court that have already addressed those issues. This satisfies the second element of the *Rooker-Feldman* test.

Thus, as in *Mann*, *sua sponte* dismissal of Galen's Complaint on *Rooker-Feldman* grounds is warranted.[6] Whatever remedies remain for Galen, they must be pursued through the state courts either in South Dakota or in Colorado.[7]

---

[6] As in *Mann*, to the extent that Galen asserts a colorable claim that might survive *Rooker-Feldman*, this Court is at a loss to extract it from the lengthy and redundant Complaint. More than half-again as long as the 83-page complaint in *Mann* that the 10th Circuit found to violate Fed. R. Civ. P. 8's "short and plain statement" requirement, Galen's 134-page Complaint, replete with subparts, detailed recitations of every phone call and visit with his mother, and seemingly random insertions of heretofore unnamed Defendants into various claims, prevents any meaningful attempt by this Court to locate any claims that might survive. 477 F.3d at 1148.

Even assuming the Court could extract one or more claims not barred by *Rooker-Feldman*, Galen would face additional obstacles to presenting them here. Notably, the Certificate of Service attached to his Complaint makes clear that all Defendants are residents of South Carolina, and the Complaint gives no indication of facts that would permit this Court to assert personal jurisdiction over them. Even so, it is clear that the pertinent events, evidence, and witnesses are all located in South Dakota, such that this Court would likely transfer venue of any claims that did survive to that jurisdiction.

[7] It is important to recognize, however, that application of the *Rooker-Feldman* doctrine does not turn on whether it <u>remains</u> possible for Galen to take an appeal from Judge Davis' rulings. To the extent that Galen may now precluded from appealing the rulings – because of untimeliness or procedural default or some other impediment – he must either seek any collateral relief that may be available under South Dakota procedural law or simply accept the outcome. *Skit Intern., Ltd. v. DAC Technologies of Arkansas, Inc.*, 487 F.3d 1154, 1158 (8th Cir. 2007) ("we decline to exempt from *Rooker-Feldman* a party whose appeal was not heard because it was untimely"). *Rooker-Feldman* is a doctrine that precludes federal jurisdiction, not a doctrine that makes federal courts available as a last resort to litigants who have exhausted their options under state law.

Indeed, even if this Court were convinced that the Courts of South Dakota improperly rejected Galen's attempts to appeal, it is still powerless to act. *Id.* (" Skit urges us to find that its

Accordingly, the Court **DENIES** the motion for a temporary restraining order or preliminary injunction **(# 3)** and *sua sponte* **DISMISSES** the Complaint **(# 1)** for lack of subject-matter jurisdiction. The Clerk of the Court shall close this case.

Dated this 13th day of January, 2015.

**BY THE COURT:**

_____
Marcia S. Krieger
Chief United States District Judge

---

notice of appeal and attempt to file the record were not untimely under Arkansas law and that its appeal was therefore wrongfully denied by the Arkansas Supreme Court. This is precisely what the *Rooker–Feldman* doctrine was intended to prevent: federal review and rejection of a state court decision").